**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WENFENG FAN,<br>Petitioner,<br>v.<br>JAMES JANECKA, et al.,<br>Respondents. | CASE NO. 5:26-cv-06674-SK<br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner Wenfeng Fan is a citizen of China detained at the Adelanto ICE Processing Center. He was arrested in late July 2025, charged with removability as a B2-visitor overstay, and ordered detained pending removal proceedings after at least three bond hearings with two different immigration judges. In a prior petition under 28 U.S.C. § 2241, petitioner challenged the adequacy of those bond hearings, but that petition was dismissed (in relevant part) while he appealed his detention order to the Board of Immigration Appeals (BIA). *See Fan v. Bondi*, --- F. Supp. 3d. ---, 2026 WL 2276462 (C.D. Cal. Aug. 6, 2026). Rather than await the outcome of that BIA appeal, petitioner now seeks release—and only release—with another § 2241 petition.

This time, petitioner disclaims any collateral habeas challenge to the operative immigration judge's detention order under which he is detained in ICE custody. And he doesn't deny the possibility that the BIA could overturn that detention order on administrative appeal. Instead, he claims only that he is constitutionally guaranteed release even sooner because of how he came into ICE custody in the first place: his "arrest and initial detention on July 29, 2025." (ECF 1 at 15). That antecedent event, petitioner says, "violated due process because he was given no notice and no hearing before being taken into custody." (ECF 1 at 15). According to this theory, the Due Process Clause required that he receive "notice" and "an opportunity to be heard" by a

"neutral decision-maker" to decide "whether there was any reason to take him into custody." (ECF 1 at 3). And under this theory, it doesn't legally matter that he obtained a bond hearing soon after—no matter how promptly—or received even multiple bond hearings including the most recent one where the government bore the burden of justifying his continued detention by clear and convincing evidence. *Contra Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1167 (9th Cir. 2026); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

Petitioner's procedural due process claim is flawed for many reasons and, even on its own terms, doesn't warrant immediate release as a habeas remedy under § 2241:

1. "Because this case involves a petition for the writ of habeas corpus, and not a claim for damages for illegal detention, the only issue before us is whether [petitioner's] detention is illegal today." *Alvarez-Mendez v. Stock*, 941 F.2d 956, 960 (9th Cir. 1991). Here, "no matter the circumstances of the arrest that brought him into custody initially, petitioner [had] the chance to obtain release—and thus supersede his initial seizure—at a custody redetermination hearing before an immigration judge." *Mendez v. Senior Warden*, No. 5:26-CV-03901-DOC, 2026 WL 2449572, at *3 (C.D. Cal. Aug. 20, 2026). And yet, petitioner (for this second petition) disclaims any challenge to the immigration judge's discretionary detention order. That concession is dispositive, for even if there were any antecedent violations of procedural due process, "habeas relief is unavailable because his claims have been mooted by a subsequent, unchallenged basis for detention." *Thiravong v. Scott*, 2026 WL 1382356, at *2 (W.D. Wash. May 18, 2026); *accord Wolck v. Weedin*, 58 F.2d 928, 930 (9th Cir. 1932) ("Irregularities on the part of the government official prior to, or in connection with, the arrest would not necessarily invalidate later proceedings in all respects conformable to law."); *L-J-P-L-v. Wamsley*, No. 3:25-CV-1390-IM, 2025 WL 2430268, at *6 & n.3 (D. Or. Aug. 22, 2025) ("Even if these violations occurred, they are not appropriately raised in a habeas petition, which considers the lawfulness of a continuing detention.").

2. “But even crediting petitioner’s account, release from custody would not follow as the proper § 2241 remedy.” *Mendez*, 2026 WL 2449572, at *3; *accord L-J-P-L-*, 2025 WL 2430268, at *6 n.3. Contrary to petitioner’s contention, the remedy for his asserted procedural due process violation is not invariably unconditional release. *See Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (“[T]he habeas court must have the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted.”). Because habeas petitions must be resolved “as law and justice require,” 28 U.S.C. § 2243, “federal courts may delay the release of a successful habeas petitioner in order to provide the [government] an opportunity to correct the constitutional violation found by the court.” *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *accord Rose v. Guyer*, 961 F.3d 1238, 1246 (9th Cir. 2020). That is why for detainees like petitioner—who were never previously released on bond or parole and are subject to discretionary detention only—the most common (though admittedly not universal) remedy has been a conditional habeas writ ordering release within a set time unless the detainees are given a prompt detention hearing before an immigration judge consistent with 8 U.S.C. § 1226(a). *See, e.g.*, *Fuentes v. Mullin*, No. 5:26-CV-01651-KS, 2026 WL 1847436, at *8 (C.D. Cal. June 25, 2026); *Ramirez v. Warden*, No. 5:26-CV-02714-CV, 2026 WL 1658506, at *2 (C.D. Cal. June 5, 2026); *Herrera v. Mullin*, No. 5:26-CV-01561-CAS, 2026 WL 915184, at *1 (C.D. Cal. Apr. 3, 2026); *Zabala v. Bowen*, No. 5:26-CV-0918-MRA, 2026 WL 874740, at *2 (C.D. Cal. Mar. 26, 2026).

3. None of that is to deny that petitioner, even as a noncitizen, has a protected liberty interest against unjustified physical restraint. But while he “has a private interest in remaining free, he does not possess the same liberty interest as noncitizens who were previously detained and released pursuant to conditional release or parole.” *Jemna v. Warden of Otay Mesa Det. Ctr.*, No. 3:26-CV-00725-RBM, 2026 WL 788172, at *5 (S.D. Cal. Mar. 20, 2026). Thus, his reliance on the cases that may have ordered immediate release “when the Government seeks to re-detain a noncitizen

previously released under Section 1226(a)" is misplaced here. *Herman v. DHS*, No. 5:26-CV-01995-MBK, 2026 WL 1723960, at *4 (C.D. Cal. June 12, 2026); *see Sheng v. Janecka, et al.*, No. 5:26-CV-04398-BFM, 2026 WL 2365088, at *1 (C.D. Cal. Aug. 14, 2026) (finding "analogy to that body of caselaw fails, however, because Petitioner was not previously released on parole"); *Melkumyan v. Semaia*, No. 5:26-cv-03019-MBK, 2026 WL 1772761, at *2 (C.D. Cal. June 16, 2026) (explaining that in cases ordering immediate release for procedural due process violation, "petitioners had been previously released by immigration authorities based on a determination that their detention was not necessary, only to be later re-detained").

4. Nor does it matter, as petitioner contends, that the federal government—writ large—has "acquiesced" to his visa overstay either by not quickly denying his asylum or other applications for humanitarian relief or otherwise by not arresting and deporting him much sooner. For starters, that argument fails at the basic level of administrative law: it "read[s] intentionality into what used to be . . . a deliberate separation between the mechanisms that enforced our immigration law and those that adjudicate requests for humanitarian relief, and is now something closer to bureaucratic neglect." *Wang v. Janecha*, No. 5:26-cv-4447-BFM, 2026 WL 2584800, at *2 (C.D. Cal. Aug. 31, 2026). What one arm of the Department of Homeland Security (USCIS) may have chosen to do with petitioner's applications for relief from deportation, in other words, cannot dictate how and when another arm of the Department (ICE) chooses to enforce duly-enacted federal immigration laws [1]

---

[1] Whether the Executive *should* detain those like petitioner pending their removal proceedings is a legitimate policy question (and the subject of valid public debate)—but that is different from whether the Executive *can* detain those like petitioner who remain in the United States without lawful status based on detention statutes Congress enacted. *See Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (The Supreme Court "has repeatedly emphasized that 'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens.") (quoting *Oceanic Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)).

5. The argument also fails at the constitutional level, for "the Supreme Court has long held that aliens do not gain a blanket 'liberty' interest by entering the United States or by continuing to reside here after entry." *Rodriguez v. Vergara*, --- F.4th ---, 2026 WL 3181188, at *10 (5th Cir. Oct. 23, 2026) (en banc) (citing *Nishimura Ekiu v. United States*, 142 U.S. 651, 659-60 (1892); and *Fong Yue Ting v. United States*, 149 U.S. 698, 707 (1893)). To be sure, petitioner's claim is understandable on humanitarian or moral grounds. But that is not federal law: "Life in the United States, though highly prized, cannot be defined as a universal liberty." *Id.* (citation omitted). Thus, petitioner's contention that he and his family somehow acquired "a core, enumerated interest in 'freedom from physical restraint'"—just "because of the length of their residence here and their significant ties to the country and their communities"—is constitutionally "untenable." *Id.* It ignores that Congress, not the federal judiciary, enjoys "broad power over naturalization and immigration"—and thus "regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976). Among those rules: detention pending removal proceedings. *See Demore v. Kim*, 538 U.S. 510, 531 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process.").

6. Finally, even on its own terms, petitioner's procedural due process claim fails because he cannot demonstrate prejudice. *See Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1066 (9th Cir. 2008); *accord Herman*, 2026 WL 1723960, at *4 (requiring prejudice showing for habeas claim that the petitioner's "sudden re-detention—without notice or a meaningful opportunity to be heard why he should not be detained—violated due process"). Under petitioner's counterfactual, he would have obtained a pre-detention hearing before an immigration judge. But he has already received multiple detention hearings—and been ordered detained each time by an immigration judge. He thus cannot show any prejudice from his own claimed procedural due process violation.

* * *

For all these reasons, petitioner's second habeas petition (ECF 1) is denied. His ex parte application for a temporary restraining order or preliminary injunction directing his immediate release (ECF 5) is also denied as moot.[2] Judgment will be entered dismissing this action without prejudice, subject to the understanding that any successive petition under 28 U.S.C. § 2241 may still be reviewed for abuse of the writ. *See Eldridge v. Howard*, 70 F.4th 543, 551 (9th Cir. 2023).

IT IS SO ORDERED.

DATED: November 10, 2026

STEVE KIM
United States Magistrate Judge

[2] Nothing in this order, meanwhile, impairs petitioner's rights that he could enforce—or remedies that he may be due—as a putative member of the class in *L.T. v. ICE*, No. 5:26-cv-00322-SSS, according to the preliminary injunction there concerning medical care at the Adelanto detention facility. Nor does anything here prevent petitioner from seeking a custody redetermination hearing based on materially changed medical circumstances. *See* 8 C.F.R. § 1003.19(e). And nothing here forecloses petitioner's right to another *Rodriguez* bond hearing if he remains detained within this district for another continuous six-month interval. *See Rodriguez v. Holder*, No. CV 07-03239-TJH, 2013 WL 5229795, at *2-3 (C.D. Cal. Aug. 6, 2013).